IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|   |   |   |
|---|---|---|
| ANDREA MCGUIRK, | * | |
| Plaintiff, | * | |
| v. | * | |
| | * | Civil No. 24-3715-BAH |
| NOOM, INC., | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

After the Court dismissed her original complaint, Plaintiff Andrea McGuirk ("McGuirk") filed an amended complaint against Noom, Inc. ("Noom") alleging employment discrimination. ECF 16. Pending before the Court is Noom's motion to dismiss the amended complaint (the "Motion"). ECF 17. McGuirk filed an opposition, ECF 18, and Defendant filed a reply, ECF 19. All filings include memoranda of law, and some filings include exhibits.[1] The Court has reviewed all relevant filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). Accordingly, for the reasons stated below, Noom's Motion is **GRANTED in part and DENIED in part.**

## I.    BACKGROUND

McGuirk began working for Noom in February of 2020. ECF 16, at 2 ¶ 8. According to McGuirk, she "excelled in her position" and "was never given any negative feedback from her supervisors." *Id.* at 3 ¶ 9. During March and April of 2021, "McGuirk and others on her team faced sexual harassment by her supervisor." *Id.* ¶ 10. Specifically, "the supervisor would require"

---

[1] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

McGuirk and the other employees" "to stay on video" during meetings while "they were breastfeeding their children." *Id.* He also demanded "that they call him 'daddy' during those on-line meetings." *Id.* McGuirk and other employees "reported this supervisor to Noom" but "nothing was done." *Id.* ¶ 11. At one point after McGuirk's report, the supervisor in question "attempted to give" McGuirk "a poor review (even though her work was stella[r]), but this was corrected by the supervisor's supervisor." *Id.* McGuirk "made repeated complaints" to Noom's "Human Resources [('HR')] department about this continued harassment from the time the harassment started up until days before she was fired." *Id.* Her "complaints went ignored." *Id.*

On November 24, 2023, McGuirk was granted maternity leave by Noom. *Id.* at 4 ¶ 12. She was advised on January 20, 2024, that she would need to return to work on April 1, 2024. *Id.* ¶ 13. On January 23, 2024, "[a] few days after being advised of the expiration of her maternity leave and just a few days after making her last complaints" to HR regarding the alleged harassment by her supervisor, "McGuirk was advised that she was being terminated" by Noom. *Id.* ¶ 14. Noom then "arbitrarily terminated [McGuirk's maternity] leave early on March 1, 2024." *Id.* ¶ 16. Noom had "agreed to extend [McGuirk's] insurance for four months," but "arbitrarily cancelled [her] policy on March 31, 2024" "without any notice or offering of COBRA." *Id.* at 4–5 ¶ 17. When McGuirk requested her employment file, Noom "refused to provide" it. *Id.* at 4 ¶ 15.

McGuirk contends she "was fired solely because she was classified by the Defendant as a 'problem employee' because of her continued complaints about the harassment described and being out on maternity leave." *Id.* at 5 ¶ 18. McGuirk brings one claim in the amended complaint: "Count I – Violation of Maryland and federal law - retaliation directly resulting from protected activities." ECF 16, at 5 (capitalization and emphases altered).

2

McGuirk filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") on September 23, 2024. *See* ECF 16-2.[2] The EEOC charge indicated "Sex," "Pregnancy," and "Retaliation" as the bases for the charge and alleged the following facts:

> Ms. McGuirk reported sexual har[]assment by her manager to human resources for Noom, Inc. This har[]assment occurred in March/April 2021. Nothing was done to correct the problem so Ms. [McGuirk] and others continued to press for action. Later, Ms. McGuirk was at the end stage of her pregnancy with her third child. She requested maternity leave, which was granted by the Defendant on or about November 24, 2023. On January 20, 2024, Ms. McGuirk was advised that her maternity leave benefits would expire on April 1, 2024, and she would be required to return to work on April 1, 2024. However, a few days later, on January 23, 2024, Ms. McGuirk was advised that she was being terminated by the Defendant. Ms. McGuirk was on maternity leave when she received the termination email from Defendant.

*Id.* at 2.

The EEOC issued a right to sue letter to McGuirk on October 22, 2024. ECF 16, at 2 ¶ 4. On December 23, 2024, McGuirk timely filed her original complaint. ECF 1. Noom filed a motion to dismiss. ECF 7. After a hearing on November 17, 2025, the complaint was dismissed for failure to state a claim, *see* ECF 15, and McGuirk was granted leave to file an amended complaint.

---

[2] The Court may consider "documents attached to the complaint, 'as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic.'" *Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019) (quoting *Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)). A document is "integral" when "its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation modified). Here, McGuirk attached the charge of discrimination to her complaint, incorporates it by reference, and neither party contests its authenticity. *Cf. White v. Mortgage Dynamics, Inc.*, 528 F. Supp. 2d 576, 579 (D. Md. 2007) (a court may consider a charge of discrimination attached to motion to dismiss where charge was incorporated by reference, integral to the complaint, and no party objected); *see also Bowie, v. Univ. of Maryland Med. Sys.*, Civ. No. ELH-14-03216, 2015 WL 1499465, at *3 (D. Md. Mar. 31, 2015) ("Courts commonly consider EEOC charges as integral to a plaintiff's Complaint, *i.e.*, effectively a part of the pleading, even if the EEOC charge is not filed with the Complaint."). The Court thus considers the charge in resolving Noom's Motion.

McGuirk did so on December 16, 2025. ECF 16. Noom has filed a motion to dismiss the amended complaint, ECF 17, which is ripe for disposition.

## II.   **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) governs dismissals for failure to "state a claim upon which relief can be granted." In considering a motion under this rule, courts discount legal conclusions stated in the complaint and "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court then draws all reasonable inferences in favor of the plaintiff and considers whether the complaint states a plausible claim for relief on its face. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

"The complaint must offer 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'" *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). At the same time, a "complaint will not be dismissed as long as [it] provides sufficient detail about [the plaintiff's] claim to show that [the plaintiff] has a more-than-conceivable chance of success on the merits." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014).

## III.   **ANALYSIS**

### A.   **Statutory Background**

Under Title VII of the Civil Rights Act ("Title VII"), an employer may not "discriminate against any individual with respect to [the] ... terms, conditions, or privileges of [her] employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1); *see Strothers v. City of Laurel, Md.*, 895 F.3d 317, 326–27 (4th Cir. 2018). The

Pregnancy Discrimination Act ("PDA") amended Title VII to specify that "[t]he terms 'because of sex' or 'on the basis of sex' include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions." *See id.* § 2000e(k). "A claim of discrimination on the basis of pregnancy is analyzed in the same manner as a sex discrimination claim brought under Title VII." *Hines v. LeafGuard Holdings Inc*, Civ. No. LKG-25-00306, 2026 WL 776078, at *7 (D. Md. Mar. 19, 2026) (citing *Holmes v. e.spire Commc'ns.*, 135 F. Supp. 2d 657, 661 (D. Md. 2001)). In addition to barring discrimination, Title VII prohibits employers from retaliating against employees who oppose discriminatory conduct. 42 U.S.C. § 2000e-3(a). It provides: "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." *Id.*

The Americans with Disabilities Act ("ADA") prohibits discrimination in the form of "a failure to make a reasonable accommodation." *Crabill v. Charlotte Mecklenburg Bd. of Educ.*, 423 F. App'x 314, 322 (4th Cir. 2011). "A reasonable accommodation is one that (1) 'enables [a qualified] individual with a disability . . . to perform the essential functions of [a] position,' . . . or (2) 'enable[s] [an] employee with a disability to enjoy equal benefits and privileges of employment as are enjoyed by . . . other similarly situated employees without disabilities.'" *Hamel v. Bd. of Educ. of Harford Cnty.*, Civ. No. JKB-16-2876, 2018 WL 1453335, at *10 (D. Md. Mar. 23, 2018) (quoting 29 C.F.R. § 1630.2(o)(1)(ii)–(iii)). The Pregnant Workers Fairness Act ("PWFA") "requires employers to grant reasonable accommodations to pregnant employees and prohibits discrimination against employees which require such accommodation." *Beddingfield v. United Parcel Serv., Inc.*, No. 23-CV-05896-EMC, 2024 WL 1521238, at *8 (N.D. Cal. Apr. 8, 2024).

The PWFA provides that it is unlawful for an employer to "take adverse action in terms, conditions, or privileges of employment against a qualified employee on account of the employee requesting or using a reasonable accommodation to the known limitations related to the pregnancy, childbirth, or related medical conditions of the employee." 42 U.S.C. § 2000gg-1(5). The PWFA also proscribes retaliation against employees for engaging in protected activities. *See id.* § 2000gg-2(f)(1) ("No person shall discriminate against any employee because such employee has opposed any act or practice made unlawful by this chapter or because such employee made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."). "Where the language of the PWFA mirrors that of the ADA or Title VII, the Court applies the legal standards governing ADA and Title VII claims to Plaintiff's corresponding PWFA claims." *U.S. E.E.O.C. v. Sec. Assurance Mgmt., Inc.*, No. 25-00181 (RC), 2025 WL 2911781, at *4 n.4 (D.D.C. Oct. 14, 2025).

Under the Maryland Fair Employment Practices Act ("MFEPA"), an employer may not "fail or refuse to hire, discharge, or otherwise discriminate against any individual with respect to the individual's compensation, terms, conditions, or privileges of employment" because of, relevant here, the individual's sex or disability. Md. Code Ann., State Gov't ("SG") § 20-606(a)(1)(i). Similarly, MFEPA prohibits an employer from discriminating or retaliating "against any of its employees" because that individual has either "opposed any practice prohibited by [MFEPA]" or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [MFEPA]." *Id.* § 20-606(f). "Maryland courts 'traditionally seek guidance from federal cases in interpreting' MFEPA." *Hammond-Thompson v. Temple View Cap.*, Civ. No. ABA-23-1502, 2026 WL 850510, at *11 (D. Md. Mar. 27, 2026) (quoting *Haas v. Lockheed Martin Corp.*, 914 A.2d 735, 742 (Md. 2007)). For sex discrimination claims under

6

MFEPA, Courts "generally apply 'the same substantive standards and burden of proof as Title VII.'" *Id.* (quoting *Thomas v. Advance Stores Co., Inc.*, Civ. No. LKG-24-763, 2025 WL 637465, at *3 (D. Md. Feb. 27, 2025)). Similarly, a claim for failure to accommodate under MFEPA is analyzed under the same standard as such a claim under the ADA. *See Peninsula Reg'l Med. Ctr. v. Adkins*, 137 A.3d 211, 214, 220 (Md. 2016) (applying the ADA standard in evaluating a disability discrimination claim under the MFEPA); *see also Gagnon v. Bd. of Educ. of Montgomery Cnty.*, 760 F. Supp. 3d 359, 369 (D. Md. 2024) (doing the same).

### B.   Retaliation

McGuirk alleges Noom retaliated against her by terminating her "within days . . . after repeatedly notifying" Noom's HR "of sexual harassment from a superior and while she was on maternity leave." ECF 16-1, at 6 ¶ 26. She also contends that the supervisor against whom she made the complaint attempted to give her a poor review in retaliation to her report. *See id.* at 3 ¶ 11. She alleges that Noom "further retaliated against [her] by forcing her to [r]elease any and all claims she may have or waiving a buy out of earned stock options; cancelling her insurance without offer[ing] COBRA . . .; and by terminating the remainder of her maternity leave pay in violation of its own termination letter." *Id.* at 6–7 ¶ 26.

As noted, Title VII, MFEPA, and PWFA prohibit employers from retaliating against employees who oppose discriminatory conduct pursuant to those statutes. *See* 42 U.S.C. § 2000e-3(a) (Title VII); Md. Code Ann., SG § 20-606(f) (MFEPA); 42 U.S.C. § 2000gg-2(f)(1) (PWFA). To prove a claim of retaliation, McGuirk must show that: (1) she "engaged in protected activity [under the relevant statutes], (2) she suffered an adverse employment action, and (3) there was a causal connection between the protected activity and the adverse action." *Ray v. Int'l Paper Co.*, 909 F.3d 661, 669 (4th Cir. 2018) (citation omitted) (alteration added). Here, McGuirk alleges that "making complaints of sexual harassment and being out on maternity leave from her

pregnancy" are protected activities upon which she bases her retaliation claim. ECF 16, at 5 ¶ 19; *see also* ECF 18-1, at 10 ("There are two protected activities alleged in the Amended Complaint: Sexual harassment and Pregnancy discrimination."). Defendant does not dispute that a complaint of sexual harassment is a protected activity. *See* ECF 17-1, at 6; *see also Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 122 (4th Cir. 2021) (finding an employee's complaints of sexual harassment by his supervisor to other supervisors and ultimately to the manager of human resources were "protected activity" for purposes of a retaliation claim under Title VII). McGuirk, however, fails to sufficiently allege that she engaged in a protected activity by taking maternity leave.

"[I]n the context of a retaliation claim, a 'protected activity' may fall into two categories, opposition and participation." *E.E.O.C. v. Navy Fed. Credit Union*, 424 F.3d 397, 406 (4th Cir. 2005). For example, "[a]n employer may not retaliate against an employee for participating in an ongoing investigation or proceeding under Title VII, nor may the employer take adverse employment action against an employee for opposing discriminatory practices in the workplace." *Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998). Here, McGuirk merely alleges that she was pregnant and then took maternity leave, not that she was either participating in an investigation of pregnancy discrimination or making a simultaneous complaint of the same. *See Parker*, 2021 WL 5840949, at *22 (finding that a "request to accommodate a pregnancy, made without any simultaneous complaint of discrimination" was not protected activity because it "involves no opposition to any suspected violation" of the law). McGuirk similarly does not allege that she was engaged in any protected activity related to a request for accommodation for her pregnancy such that her retaliation claim would arise under the PWFA. *Cf. Sec. Assurance Mgmt., Inc.*, 2025 WL 2911781, at *4 (noting repeated complaints about lack

of lactation accommodations were a basis for a retaliation claim under the PWFA). As pled, McGuirk has not alleged a plausible claim for retaliation based on her pregnancy or maternity leave; thus, her retaliation claim may only proceed based on her complaints of sexual harassment.

McGuirk primarily grounds her retaliation claim on two adverse employment actions: her supervisor's "attempt[] to give" McGuirk "a poor review," ECF 16, at 3 ¶ 11, and her termination, of which she was notified in January of 2024, *id.* at 6 ¶ 26. "An adverse employment action is one that 'well might have dissuaded a reasonable worker' from engaging in protected conduct." *Ray*, 909 F.3d at 670. Noom does not dispute that a poor review and termination are adverse employment actions in the context of McGuirk's retaliation claim.[3] ECF 17-1, at 6, 8.

Noom argues, however, that the Court may not consider these adverse actions because they were not included in McGuirk's EEOC charge. ECF 17-1, at 10. "Title VII requires that a plaintiff file a charge of discrimination with the EEOC before filing suit." *Hines*, 2026 WL 776078, at *4; *see also Puryear v. Cnty. of Roanoke*, 214 F.3d 514, 518 (4th Cir. 2000) ("After a charge is properly filed with the EEOC, the aggrieved person may initiate a civil action based on the Title VII claims made in her EEOC charge only after receipt of a right-to-sue letter." (citing 42 U.S.C. § 2000e-5(f)(1)). "An administrative charge of discrimination does not strictly limit a Title VII suit that may follow; rather, the scope of the civil action is confined only by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination." *Chisholm v. United States Postal Serv.*, 665 F.2d 482, 491 (4th Cir. 1981). "Only

---

[3] The amended complaint also references other actions taken by Noom including: early termination of McGuirk's maternity leave in March of 2024, ECF 16, at 4 ¶ 16; abrupt termination of her health insurance benefits in March of 2024, *id.* at 4–5 ¶ 17; and an attempt to force McGuirk "to [r]elease any and all claims she may have or waiving a buy out of earned stock options," *id.* at 6–7 ¶ 26. These acts go unmentioned in Noom's motion to dismiss; accordingly, the Court does not address whether they qualify as adverse employment actions here.

those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996); *see also Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005) ("The factual allegations made in formal litigation must correspond to those set forth in the administrative charge."). For example, "[a] claim will . . . typically be barred if the administrative charge alleges one type of discrimination—such as discriminatory failure to promote—and the claim encompasses another type—such as discrimination in pay and benefits." *Chacko*, 429 F.3d at 509. "At the same time, however, if the factual allegations in the administrative charge are reasonably related to the factual allegations in the formal litigation, the connection between the charge and the claim is sufficient." *Id.* Moreover, because "lawyers do not typically complete the administrative charges, . . . courts construe them liberally." *Id.* (citing *Alvarado v. Bd. of Trs. of Montgomery Cmty. Coll.*, 848 F.2d 457, 460 (4th Cir. 1988)).

Noom argues that *Johnson v. Silver Diner, Inc.*, Civ. No. PWG-18-3021, 2019 WL 3717784 (D. Md. Aug. 7, 2019), is instructive on the question of whether McGuirk's EEOC charge encompasses the claims she now alleges. ECF 17-1, at 11. In *Johnson*, the plaintiff alleged in his EEOC charge that the adverse employment actions he experienced included a negative performance review and termination. *Johnson*, 2019 WL 3717784, at *5. In his later-filed complaint, Johnson alleged that the adverse actions he suffered included denial of a bonus and termination. *Id.* Because the bonus denial was omitted entirely from the EEOC charge, Judge Grimm declined to consider it as a basis for Johnson's retaliation claim. *Id.*

Here, the Court concludes that McGuirk's retaliation claim may stand on her complaint of sexual harassment shortly before her termination, but not the alleged negative performance review

10

by her supervisor. McGuirk's EEOC charge states in relevant part that "McGuirk reported sexual harassment by her manager to human resources," and "[n]othing was done to correct the problem so [McGuirk] and others continued to press for action." ECF 16-2, at 2–3. The Court acknowledges that this allegation is not as specific as the one made in the amended complaint that McGuirk made a complaint to HR days before her termination. *See* ECF 16, at 3 ¶ 11. However, McGuirk's retaliation claim, whether in her EEOC charge, original complaint, or amended complaint, was always based on reporting sexual harassment to Noom's HR. *See* ECF 16-2, at 2–3; ECF 16, at 2 ¶ 4; ECF 1, at 3 ¶ 11. The timing of any complaint to HR could have been ascertained by a reasonable investigation of the facts alleged in the charge. ECF 16-2, at 2–3 (alleging that McGuirk "reported sexual harassment" to HR and "continued to press for action"). Considering the liberal construction afforded to EEOC charges, the Court concludes that the allegations in the charge and those in the amended complaint alleging sexual harassment shortly before her termination are reasonably related such that McGuirk may maintain her Title VII suit on that basis. *Evans*, 80 F.3d at 963. However, McGuirk may not bring the retaliation claim based on the supervisor's attempted poor review, which was omitted entirely from her EEOC charge and does not appear to be reasonably related to the allegations raised therein.[4] *Cf. Kersting v. Wal– Mart Stores, Inc.,* 250 F.3d 1109, 1118 (7th Cir. 2001) ("[T]he EEOC charge and the complaint must, at minimum, describe the same conduct and implicate the same individuals.") (internal quotation marks omitted).

---

[4] In any event, a retaliation claim based on this adverse employment action would fail, as McGuirk provides no temporal information about this poor review to establish any inference of causation. *Cf. Siguel v. King Farm Citizens Assembly, Inc.,* Civ. No. GLS 22-672, 2023 WL 6643348, at *15 (D. Md. Oct. 12, 2023) (explaining that using temporal proximity to establish causation "necessarily requires some clarity when it comes to the timeline of alleged events").

As to McGuirk's termination, Noom contends that McGuirk's retaliation claim nonetheless fails at causation because "*way* too much time elapsed from her alleged protected activity in 2021 to her termination in 2024." ECF 17-1, at 6. At the pleading stage, McGuirk need only allege facts plausibly supporting a reasonable inference of causation. *Miller v. Maryland Dep't of Nat. Res.*, 813 F. App'x 869, 878 (4th Cir. 2020). "A plaintiff may attempt to demonstrate that a protected activity caused an adverse action through two routes." *Johnson v. United Parcel Serv., Inc.*, 839 F. App'x 781, 783–84 (4th Cir. 2021). "First, a plaintiff may establish that the adverse act bears sufficient temporal proximity to the protected activity." *Id.* at 784 (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001)). "Second, a plaintiff may establish the existence of other facts that alone, or in addition to temporal proximity, suggests that the adverse employment action occurred because of the protected activity." *Id.*

Noom is correct that a three-year gap between a complaint in 2021 and termination in 2024 would be problematic for causation purposes. *See Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998) (noting that a three-year lapse "negates any inference that a causal connection exists" between protected activity and an adverse employment action). However, McGuirk also alleges that she also made a complaint of harassment to HR "just days before she was fired." ECF 16, at 3 ¶ 11; *see also id.* at 4 ¶ 14 (alleging that McGuirk was terminated "just day after making her last complaints to the Defendant's 'HR' Department regarding the continued harassment"). Although McGuirk's harassment complaint made shortly before her termination is chronicled without much detail in the amended complaint, such an allegation, taken as true, is sufficient to support a plausible inference of causation at this stage. *Cf. Peterson v. Cap. One, N.A.*, 705 F. Supp. 3d 484, 498 (D. Md. 2023) (finding a negative comment about a plaintiff's previous discrimination complaint just days before the plaintiff's termination

supported an inference of retaliation). McGuirk has therefore plausibly alleged a Title VII and MFEPA claim of retaliatory termination based on her sexual harassment complaint to HR right before her termination.

## C.    Discrimination

The amended complaint states only one count of "retaliation directly resulting from protected activities." ECF 16, at 5 (capitalization and emphases altered). Nevertheless, McGuirk contends in her opposition brief that she also brought a claim for discrimination based on Noom's failure to provide McGuirk with reasonable accommodations. ECF 18-1, at 19–22. "It is well-established that parties cannot amend their complaints through briefing or oral advocacy." *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013). Further, to the extent McGuirk meant to assert a reasonable accommodation claim, such a claim would fail.

McGuirk's reasonable accommodation claim may arise under MFEPA or PWFA. The elements of a reasonable accommodation claim under each statute are largely the same as a claim under the Americans with Disabilities Act ("ADA"). *See Keiper v. CNN Am., Inc.*, No. 24-CV-875, 2024 WL 5119353, at *2 (E.D. Wis. Dec. 16, 2024) ("Congress intended the PWFA to expand protections for pregnant employees and modeled it largely off the Americans with Disabilities Act (ADA)."); *see also Jennings v. Frostburg State Univ.*, 679 F. Supp. 3d 240, 275 (D. Md. 2023) (applying the ADA standard to an MFEPA claim). Under the PWFA, McGuirk must plausibly allege that "(1) she is a qualified individual; (2) the employer was aware of her limitation; and (3) the employer failed to reasonably accommodate the limitation." *Keiper*, 2024 WL 5119353, at *2. Under MFEPA, McGuirk must allege that (1) "she had a disability; (2) that notwithstanding the disability, [ ] she was otherwise qualified for the employment, with or without reasonable accommodation; and (3) that [ ] she was excluded from employment on the basis of his or her

disability." *Jennings*, 679 F. Supp. 3d at 275 (quoting *Peninsula Reg'l Med. Ctr.*, 137 A.3d at 236)).

Any reasonable accommodation claim brought under MFEPA would fail because McGuirk does not allege that she was disabled. "The ADA defines 'disability' in regard to an individual as 'a physical or mental impairment that substantially limits one or more major life activities of such individual; a record of such an impairment; or being regarded as having such an impairment.'" *Scherck v. Johns Hopkins Univ. Applied Physics Lab'y LLC*, Civ. No. ADC-23-1605, 2023 WL 6311469, at *6 (D. Md. Sept. 28, 2023) (quoting 42 U.S.C. § 12102(1)(A)–(C)). "However, federal courts have consistently held that pregnancy is not a disability under the ADA." *Id.* (citing *Parker*, 2021 WL 5840949, at *16). Nevertheless, "while pregnancy alone is insufficient to state a claim under the ADA, complications related to pregnancy may be found to be impairments that substantially limit a major life activity such that they constitute disabilities." *Id.* (quoting the same). McGuirk, however, does not allege that she had any pregnancy-related complications that could constitute a disability; she merely alleges that she was pregnant with her third child and then went on maternity leave. *See* ECF 16, at 4. Any reasonable accommodation claim under MFEPA thus fails. *Cf. Saah v. Thumel*, Civ. No. RDB-15-2425, 2017 WL 491221, at *6 (D. Md. Feb. 7, 2017) (finding a plaintiff failed to establish a pregnancy-related impairment at summary judgment where she merely indicated she "required help on a 'case-by-case basis' during the final three months of her pregnancy with certain of her responsibilities").

Any failure to accommodate claim under the PWFA also fails for similar reasons. "Employers only face liability under the PWFA for failure to accommodate their employee's known limitations" related to pregnancy or childbirth. *Keiper*, 2024 WL 5119353, at *3 (emphasis omitted) (citing 42 U.S.C. § 2000gg-1(1)). "[T]he term 'known limitation' means physical or

14

mental condition related to, affected by, or arising out of pregnancy, childbirth, or related medical conditions that the employee or employee's representative has communicated to the employer whether or not such condition meets the definition of disability specified in . . . the [ADA][.]" *Id.* (quoting 42 U.S.C. § 2000gg(4)). Here, McGuirk does not allege that she had any limitation resulting from her pregnancy or that her request for maternity leave was due to any such limitation. ECF 16, at 4 ¶ 12 ("McGuirk ultimately was at the end stage of her pregnancy with her third child. She requested maternity leave, which was granted by the Defendant[.]"). Nor does she allege that she communicated any pregnancy-related limitation to Noom. *Cf. Keiper*, 2024 WL 5119353, at *4 (finding a PWFA accommodation claim failed because the plaintiff never communicated any pregnancy-related complications to her employer and nothing in her "maternity leave request signaled it was *due* to any limitation"); *but cf. Ventura De Brown v. Centers Lab NJ LLC*, No. 25CV13258 (EP) (AME), 2026 WL 1329713 (D.N.J. May 13, 2026) (denying a motion to dismiss a failure to accommodate claim under the PWFA where the plaintiff alleged that she had "prenatal preeclampsia, high blood pressure, and other medical complications" related to her pregnancy and was refused the accommodation of more frequent bathroom breaks and a modification of her schedule). Even if McGuirk had raised any failure to accommodate claims, they would fail.

## IV.    CONCLUSION

For the foregoing reasons, Noom's motion to dismiss is GRANTED in part and DENIED in part. McGuirk's claim of retaliation for reporting sexual harassment under Title VII and MFEPA may proceed, but her retaliation claim based on the PWFA is dismissed.

A separate implementing order will issue.

Dated: July 9, 2026

_____/s/_____
Brendan A. Hurson
United States District Judge

15